**AMERICAN FRUIT GROWERS, Inc., v. BROGDEX CO.**

Circuit Court of Appeals, Third Circuit.
October 7, 1929.

Rehearing Denied November 15, 1929.

No. 3760.

Ward, Gray & Ward, of Wilmington, Del. (R. T. M. McCready, of Pittsburgh, Pa., and W. B. Morton and George E. Middleton, both of New York City, of counsel), for appellant.

Charles Neave, of New York City, Melville Church and R. F. Steward, both of Washington, D. C., and Alexander C. Neave, of New York City (William G. Mahaffy, of Wilmington, Del., of counsel), for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and KIRKPATRICK, District Judge.

DAVIS, Circuit Judge. This is an appeal from the decree of the District Court holding claims from 1 to 9, 14 to 18 and 23 to 26 inclusive, of United States Letters Patent No. 1,529,461 issued to Ernest M. Brogden and Miles L. Trowbridge, March 10, 1925 and by them assigned to the Brogdex Company, valid and infringed by the defendant, American Fruit Growers, Inc.

[1] Claims 1 to 9 and 14 to 18, inclusive, are process claims, and 23 to 26, inclusive, are product claims. The patent is for "Improvements in the Art of Preparing Fresh Fruit for Market." The process claims relate particularly to processes for the treatment of citrus fruits in such manner that the development of molds and the like upon the fruit, and especially the development of blue mold and infection by blue mold spores, is prevented or arrested either wholly or to such extent as greatly to prolong the marketable life of the fruit beyond the period theretofore possible.

The decay is caused by parasitic fungi,

penicillium, a genus of the ascomycetous fungi, commonly called "blue mold," whose spores find lodgment and germinate most frequently in the lesions in the skin of citrus fruit. The ravages of blue mold decay result in enormous losses to fruit growers and packers, and for years strenuous efforts had been made to overcome or reduce blue mold decay and to prevent this loss. These efforts were elaborate and organized and carried on with great care and energy, but the problem remained unsolved until the patent of Brogden and Trowbridge. Up to the time of this patent, the teaching of the industry was that the only practical way to prevent blue mold decay was by extremely careful handling, so as to avoid the slightest surface injury, and by refrigeration.

The process of the patent consists in subjecting the fruit to be packed and shipped to an aqueous solution of borax, so as to impregnate the rind or skin of the fruit with the borax and render it resistant to blue mold decay. Claim 3 is typical of the process claims, and claim 26 is typical of the product claims:

3. "In the preparation of fresh fruit for market, the process which comprises subjecting fruit to the action of an aqueous solution of borax, the fluidity, strength and temperature of the treating solution, and the duration of the treatment, being such that exposed rind or skin tissues of the fruit are effectively impregnated with borax and rendered resistant to blue mold decay, while at the same time the fruit is not scalded nor is its freshness or edibility otherwise substantially impaired."

In general the process, as stated in the specification, consists in applying to the fruit a mold inhibiting reagent comprising the boric acid radical which is alkaline in reaction and renders the surface of the fruit unfavorable as a medium for blue mold development. Compounds of borax appear to have a specific inhibiting action upon blue bold, but is without corrosive or other deteriorating action upon fruit to which it is applied.

The invention is not a mere patent on borax nor on its general unlimited application on fruit. The patentees say that:

"The patent recognizes that under modern commercial harvesting and packing house conditions, surface injury of a substantial proportion of the fruit handled is an absolutely unavoidable incident, and it provides for the application of borax to fruit thus commercially handled but under such conditions as to ensure impregnation of the exposed rind tissues with an amount of borax adequate to inhibit mold growth and to prevent spore development; and to leave in these tissues and on the surface of the fruit generally such a residue of borax as will render the fruit effectively resistant to blue mold decay."

As a practical matter it is hardly feasible commercially to gather large quantities of fruit rapidly and economically without a substantial percentage of the fruit being scratched, cut, pricked, or otherwise mechanically injured, notwithstanding the highest degree of care that can be exercised in commercial practice. The slightest surface scratch or abrasion, even so minute as to be undiscernible to the naked eye, furnishes a foothold to blue mold spores which in the practice heretofore followed are unavoidably present everywhere in packing houses, on machinery, in wash water, and floating in the air, ready to infect all fruit having the slightest bruise, scratch, or abrasion. As a result, often the decay and loss from blue mold is as high as 30 to 40 per cent. The processes of this patent satisfactorily demonstrate that blue mold decay can be arrested, the fruit rendered immune to attack by blue mold spores, and its marketable life extended far beyond that of untreated fruit, without affecting the freshness and flavor of the fruit.

The method of applying the inhibiting solution to the fruit may vary, the precise details of procedure not being essential to the invention in its broader aspects, but generally borax is added directly to the wash water in the usual soaking tank into which the fruit is dumped from the field boxes as it comes from the grove. The exposed tissues become impregnated with the reagent and render them immune to attack. It has been found that the solution acts best when it is about 115° to 120° Fahrenheit. The strength of the solution may vary, but generally experience shows that the solution should be at least about 5 per cent. by weight or about 6 or 7 ounces of borax to a gallon of water. The invention deals with a problem peculiar to commercial large-scale methods of handling fresh fruit.

Claim 26 is typical of the product claims and is as follows:

"26. Fresh citrus fruit of which the rind or skin carries borax in amount that is very small but sufficient to render the fruit resistant to blue mold decay."

The product claims define an article of manufacture, since the fruit is the result of a process which is defined and described and

not a natural product. The product is a combination of the natural fruit and a boric compound carried by the rind or skin in an amount sufficient to render the fruit resistant to decay. The complete article is not found in nature and is thus an article of manufacture. Riter-Conley Mfg. Co. v. Aiken et al. (C. C. A.) 203 F. 699.

Infringement is admitted, if the patent is valid, and the sole question, therefore, is validity.

There is no question about the need of some kind of inhibiting agent to prevent blue mold decay, nor about the search of the industry for it. From 1902 to the invention in 1923, the entire industry engaged in growing, packing, and selling citrus fruit, departments of agriculture of states and the federal government, together with such eminent horticulturists and pomologists as Powell, Hart, Tenny, Woodworth, Dyer, Fawcett, McKay, Skinner, Sadler, Ramsey, Mann, Holton, Stubenrauch, and others, were earnestly and laboriously in a concerted and continuous effort studying the problem of finding something to prevent blue mold decay. Concentrated study and continuous co-operation among growers, packers, dealers, and scientific men who investigated the subject resulted in the conclusion that the only way to stop or minimize blue mold decay was to prevent injury to the fruit by careful handling and by refrigeration. The opinion was practically unanimous that chemical treatment was not helpful but harmful.

The application for the patent was filed August 13, 1923, and soon thereafter, in the early part of 1924, the agricultural department experts of California and Florida began to issue bulletins, contrary to their former teaching, about the new and effective way of stopping blue mold by the use of borax solution. While with careful handling the losses ran as high as 30 to 40 per cent., under the processes of the patent conducted by the California Fruit Growers' Association at its packing house in California, out of 86 car shipments only in 3 cars did the losses exceed 3 per cent. The borax treatment applied to very ripe fruit by Dezell, general manager of the California Fruit Growers' Exchange, resulted in reducing the blue mold decay more than two-thirds. This saving is considerable when it is recalled that from California alone as far back as 1905, 10,000,000 boxes of citrus fruit, valued at $27,000,000, were shipped yearly.

On October 17, 1924, about 14 months after the patent was applied for and 4 months after Dezell sent his letter addressed, "To all Shippers," telling them of the wonderful results obtained by the borax treatment, the Florida Citrus Exchange sent out a bulletin, "To all Sub-Exchange and Association Managers," telling them that their experiments showed that by dipping citrus fruits in a 5 per cent. borax solution at a temperature between 115 and 120 degrees F. for a period of five minutes 90 per cent. of the blue mold rot was prevented under conditions favorable to its development. He said: "This advance announcement is made so that Florida shippers may consider the question of trying out the treatment early in the shipping season. * * * It is requested that the matter be kept from the press for the present, until publication can be made of the evidence on which the conclusions are based."

All the literature sent out in 1924 by the various citrus exchanges and associations shows that the borax treatment was something new and a distinct departure from any treatment known and followed theretofore, and was remarkably effective in preventing blue mold decay. At the same time government publications and trade journals were taking up the discussion of the borax treatment as a new treatment.

All this shows that the citrus-growing world had found in this patent what it had been earnestly and unitedly searching for during a quarter of a century. Fulton, of the Bureau of Plant Industry, at its annual meeting held at Eustis, Fla., on April 7, 8 and 9, 1925, in speaking of the borax treatment, said, "For a long time fruitless search has been made for a satisfactory chemical agent that will control these (blue mold and stem) rots," and this agent was found in the borax treatment.

The defendant contends that there was no long and unsuccessful search for an inhibiting reagent to prevent or control blue mold decay, and that the use of borax was apparent to scientific men skilled in the art or food preservation, and cites the experiments in the Department of Agriculture of Dr. H. C. Gore in collaboration with Dr. W. M. Scott. True, they did make some experiments on oranges in December, 1904, and January, 1905, which showed that borax retarded the progress of blue mold decay on citrus fruit when applied to mechanical injuries; but nothing ever came of the knowledge that they obtained from the experiments or otherwise. They never made it public. The defendant says that the "experiment was nipped in the bud by Dr.

Powell for reasons which were quite cogent in those days of pure food campaigns." Dr. Gore said: "I reported the results of this experiment to Dr. Powell, and I believe also to Dr. W. A. Taylor. I remember that Dr. Powell noticed the presence of a few crystals of boric acid on the surface of the oranges, and just at that time I might say there was a great deal of agitation against the use of any chemicals in connection with foodstuffs on account of the agitation in connection with the Pure Food Law which was passed a couple of years later, and Dr. Powell did not like the idea of anything suggesting that chemicals had been used appearing on a wrapper or on an orange and he deprecated the idea of using boric acid for that reason."

As we interpret the language of Dr. Gore, it was an inference on his part that Dr. Powell did not adopt and follow out this experiment because of the agitation in connection with the Pure Food Law which did not come into existence for two years. Dr. Powell, and others working with him, did, as a matter of fact, use and experiment with chemicals until they reached the conclusion that they were ineffective and could not be used as inhibitive reagents on citrus fruit, because they had the idea that the spores must be destroyed and any chemicals strong enough to kill them would injure the fruit or were too expensive. Strong toxic chemicals of positive fungicidal action, such as copper sulphate, ammoniacal copper carbonate, bichloride of mercury, and the like, were used for killing the spores. The idea of killing spores instead of inhibiting them led directly away from anything like borax treatment. Dr. Powell never once even hinted to the trade that borax or any chemical could not be used for any such reason as given by Dr. Gore or the defendant, but with other pomologists and horticulturists in general thought that spores had to be destroyed by means of strong chemicals.

The patentees proceeded upon a different theory. It was their idea, not to destroy spores, but by means of antiseptic borax solution seal the broken places in the citrus rind that had been punctured and thus close to the spores avenues through which they entered the fruit. The borax solution thus inhibits rather than kills the spores. ▮ This new treatment of citrus fruit was adopted by the industry after elaborate tests by experts and citrus fruit organizations, which is strong evidence of invention. Westinghouse Air-Brake Co. v. New York Air-Brake Co. (C. C.) 59 F. 581, 593.

▮▮ There was doubtless prior use of borax as a preservative, but the record fairly interpreted, as the learned district judge found, clearly shows that there was no prior use of it as an inhibiting reagent for blue mold decay. We have an old and well-known substance applied in a new and useful way, and this constitutes invention. The activity of and investigations conducted by the citrus growers, packers and shippers, scientific men, and the departments of agriculture, federal and state, to find some reagent to control blue mold decay, are inexplicable on any other theory. The burden of proof rests upon the defendant to establish prior use and every doubt should be resolved against him. Oral testimony of prior use is generally unsatisfactory because of the forgetfulness of witnesses, their liability to mistakes, and their proneness to recollect things favorable to the party calling them. Consequently courts have imposed upon defendants the burden of proving prior use beyond a reasonable doubt. Coffin v. Ogden, 18 Wall. (85 U. S.) 120, 21 L. Ed. 821; The Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. The defendant's testimony does not sustain the burden imposed upon it. What the patentee did was, not to discover that borax was a good antiseptic and preservative, but to discover that borax was a good inhibiting reagent for controlling blue mold decay on fresh citrus fruit when applied as the patent directs. As the court below said: "Their invention, as I understand it, is not the mere use of borax or boric acid, nor of the use of that force in a specific manner; but it consists in the subjection of a specific object to the influence of a specific force, acting through a specific mode of application to produce a specific result. See Robinson on Patents, §§ 261–263. Such process is nowhere found in the disclosures of the prior art."

We think that the disclosures of the patent are new and useful and constitute invention, and that the patent for this process and product is valid.

The decree of the District Court is affirmed.